Good morning, Your Honors. My name is Susan E. Hill, and I represent the petitioners, the Munoz Godinez family. The Munoz Godinezes are here having the Court look again at the Hernandez v. Mukasey decision. As this Court, I assume, well knows, that deals with ineffective assistance of counsel and whether there has been a knowing and voluntary waiver of a respondent's statutory right to have such counsel in removal proceedings. Their case is a little different, because the alleged ineffective assistance happened at the BIA appellate level, rather than in front of an immigration judge. This Court, through the Ray v. Gonzalez case, which was cited in the briefs, has extended the right to statutory counsel in front of the BIA. Here, the Munoz Godinez did not get the benefit of their counsel, and they did not make a knowing or voluntary waiver of such right. In front of the judge, they were represented by an attorney. As the fact pattern indicates, they went in originally, they were referenced to, quote, an attorney. They met with a representative named Mr. Lewis at this organization. The organization was called J&N Enterprises. Kagan, when did they learn for the first time that Mr. Lewis was not an attorney? They learned he was a representative only when they went to court and Mr. Lewis brought with him an attorney, and that attorney's name, I believe, was Mr. Suroff. And they were represented throughout by Mr. Suroff, and they assumed that J&N had arranged for Mr. Suroff's representation. This is reasonable. They hired an organization. It's, I guess you could say it's similar to hiring a law firm, and you don't know which attorney is going to be representing you sometimes, but they did have an attorney represent them, which is what they paid the organization to do. After their case was denied by the judge, they went back to the same organization. They spoke to the same representative, and they hired them for an appeal, assumed again that the organization J&N, I think it was called, was a law firm. What was the question, Your Honor? Were they under the impression that J&N was a law firm? The statements did not indicate specifically the words law firm. They just said that they assumed that because J&N had provided them an attorney before, that they would provide them with an attorney again. This Court, I know, has struggled in this circuit, especially in California, with the issues of non-attorneys that are really frequently engaged in immigration proceedings. We're not struggling with it. We know it's there. Yes. But it's the Justice Department also knows about it. Yes. And doesn't do anything about it. Correct. Correct. And even takes the view that, for example, that a disbarred lawyer is better than no lawyer. Sometimes, yes. So that's a universal problem. Yes, it is, Your Honor. And we all share that guilt. And in this case, well, actually, in the Hernandez case and much of the precedent leading up to Hernandez, all of the incidents occurred in front of a judge where the respondents in removal proceedings were present, and the judge had an opportunity to specifically, or actually is under the duty in this circuit, to specifically inquire and ask, do you require representation, and the judge is required to obtain an answer, yes or no, we wish to proceed without an attorney. There are instances where, according to circumstances, that the judge is under the duty to affirmatively inquire in situations where it seems that the respondents do desire that representation, but it doesn't occur. However, at the appellate level, we don't have that quid pro quo. The respondents are not physically in front of any kind of a tribune or any person who can personally assure that they understand they are proceeding without an attorney. According to their statements, the Munoz's statements, they desired the attorney, they wanted the attorney, they assumed they were having the attorney, and they did not know that they had filed papers only in their name until they went and conferred with outside counsel, and that was once their suspicions were aroused. They were surprised to learn that they were appearing pro se. They did not know. They did not want to appear pro se. The only difference is that there was no judge or other intervening authority to ensure that they understood they were proceeding pro se, and that is what they desired. Kennedy. Do you think this is a good case to send to mediation? It meets the Morton factors. For the which factors, Your Honor? Morton. For the prosecutorial discretion? Yes. I think it would be. To tell the truth, we did have some brief conversations about it, and Oil on their end did talk to their client, but the client was thinking of a different sort of relief. But the Petitioners here are willing to go through with that and discuss it with ICE if they're inclined to explore it. Well, if you read the newspapers, the President is going to come out with some or the Attorney General will come out with some guidelines that would assist these folks. Yes. Yes. And if it happens, then that's wonderful. Of course, the Petitioners will explore whether they can take advantage of that. But as it stands here in the merits, to reiterate, they never they did want the attorney representation. They never wished to proceed without it. This Court has recognized that people who do not speak English as the first language, who come from different cultural backgrounds, do not fully understand the labyrinth of these laws and the procedures. How long have they lived here? The Munozes have been here. I apologize. I'm not sure for how long, but I know. Over 25. Probably at least that long. And they have a child here. Yes. They have significant ties. They have some disabilities. Yes. And both of them were. Last I knew, yes. And they've paid all their taxes. As far as I'm aware, yes. They've committed no crimes. Correct. They own a house. I believe so. I'd have to check the record. They own a house. Don't you know all this? I do, Your Honor. I have two oral arguments, and I get them confused. I've got six, ma'am. And they paid this guy who's not a lawyer, but who appeared to act in that capacity. He was running some law firm. He got $6,000 out of them, right? For court, yes. Yeah. And they did nothing. In court, they were represented by an attorney, and then on appeal, they messed up the appeal. Yes. They were represented by an attorney who saw them for the first time. In court, yes. In court, yeah. And. Another $1,300 for appeal. Correct. Another $1,300 for appeal. $1,300 for an appeal. And that was. And they didn't file a notice of appeal. And that was grossly mishandled. And they were lied to as far as what was happening. They were lied to. They were lied to for probably a couple of years. Several years, yes. Yeah, yeah. And so it's a pretty horrendous tale of what these people went through. And unfortunately, it's semi-common as well. It happens frequently. Yeah. Yes. All right. Do you want to save some time?  I'll reserve the rest for rebuttal. Thank you. Good morning. May it please the Court. My name is Monica Anton, appearing on behalf of the Attorney General. On the subject of the Morton memo and the Morton factors, ICE has offered renewable one-year administrative stays of removal in this case. What did you say? ICE has offered a renewable one-year administrative stay of removal to the Petitioners. So. What good is that going to do? Well, the removal orders won't be enforced. No. For one year. Well, it's renewable. So we have discussed. It's what? It's renewable after a year. Well, maybe a mediator might help you reach some agreement. That's fine. I don't have an opposition to going into mediation. Okay. Okay. That's good. That takes care of this case. Okay. Would you like me to file a motion?  What? Would you like me to file a motion, or will you refer the case? A motion for what? Mediation. That would be nice. Sure. And. Okay. Okay. Why don't you do it before you leave, so we have some sense of production for today, you know. Something good is happening. Well, I'm not sure how to do that other than asking for it orally right now. I move for mediation with Petitioners' agreement. Well, don't worry. I'll take care of it. Okay. Okay. I'll get it done. Okay. I'll put it in there, but it's a suggestion of the government. That's fine. Okay. No problem. That's good. Good. Thank you. If the court has no further questions, the government rests. Thank you. Okay. Is that all right with you? Yes, thank you. Okay. Thank you. Thank you.
judges: Schroeder, Pregerson, Nguyen